# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**,

       Plaintiff,

    v.

**WEIS MARKETS, INC.**,

       Defendant.

Case No.

**COMPLAINT AND
JURY TRIAL DEMAND**

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended; Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325; and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Party Elizabeth Book ("Book"). As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendant Weis Markets, Inc. ("Defendant"), subjected Book to a hostile work environment because of her sex (female) in violation of Title VII; unlawful medical examination and disability-related inquires in violation of the ADA; discharge because of her refusal to comply with the unlawful medical examination and disability-related inquiries in violation of the ADA; and discharge in retaliation for her protected opposition to unlawful

employment practices in violation of the ADA; and coercion, intimidation, threats, and interference with her exercise or enjoyment of ADA rights in violation of the ADA.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (3); Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     Venue is proper in the U.S. District Court for the Middle District of Pennsylvania under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the alleged unlawful employment practices were committed in the Commonwealth of Pennsylvania (Juniata County) and within this judicial district.

## PARTIES

3.     Plaintiff U.S. Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and Title I of the ADA and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (3), and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which

incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (3).

4.     At all relevant times, Defendant Weis Markets, Inc., a Pennsylvania corporation, has continuously been doing business in the state of Pennsylvania (Juniata County), as well as other states, and has continuously employed at least 15 employees.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) & (h); Section 101(5) of the ADA, 42 U.S.C. § 12111(5); and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) & (h).

6.     At all relevant times, Defendant has continuously been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.     Throughout calendar years 2021 and 2022, Defendant continuously employed more than 500 employees.

## ADMINISTRATIVE PROCESS

8.     More than 30 days prior to the institution of this lawsuit, Charging Party Elizabeth Book filed a charge of discrimination with the Commission alleging that Defendant had violated Title VII and the ADA.

3

9.     On July 17, 2023, the Commission issued to Defendant an administrative Determination finding reasonable cause to believe that Defendant had violated Title VII with respect to Book by subjecting her to a hostile work environment because of her sex (female) and had violated the ADA with respect to Book by (a) subjecting her to an unlawful medical examination and unlawful disability-related inquiries; (b) discharging her because of its requirement that she submit to an unlawful medical examination and answer unlawful disability-related inquiries; (c) subjecting her to interference, coercion, threats, and intimidation because of her exercise or enjoyment of rights granted or protected by the ADA in the form of conditioning her continued employment on her acquiescence to the unlawful medical examination and unlawful disability-related inquiries and then discharging her when she did not submit to the unlawful medical examination or answer the unlawful disability-related inquiries; and (d) subjecting her to retaliation in the form of threats to her employment and discharge because of her protected conduct (opposition). The Determination also invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.     The Commission subsequently engaged in communications with Defendant to provide Defendant an opportunity to remedy the discriminatory practices

described in the administrative Determination by informing Defendant of the remedies sought by the Commission.

11.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.     On August 29, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation.

13.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14.     Defendant employed Elizabeth Book from on or about August 1, 2021, until on or about June 17, 2022.

15.     Book's sex is female.

16.     On or about August 1, 2021, Defendant hired Book as a Part-Time Seafood Sales Associate.

17.     Effective on or about January 16, 2022, Defendant transferred Book to the position of Part-Time Monitor – Self-Checkout.

18.     From at least on or about August 1, 2021, and continuing through at least on or about June 17, 2022, Defendant operated a store located at 4521 William Penn Highway, Mifflintown, Pennsylvania 17059.

19.     Defendant has designated its store located at 4521 William Penn Highway, Mifflintown, Pennsylvania 17059, as "Store #176."

20.     Defendant employed Book at Store #176.

21.     Defendant employed Taylor Jarkovsky ("Jarkovsky") from at least on or about August 1, 2021, and continuing through at least on or about January 16, 2022.

22.     Jarkovsky's sex is female.

23.     From at least on or about August 1, 2021, and continuing through at least on or about January 16, 2022, Defendant employed Jarkovsky as Seafood Manager at Store #176.

24.     Seafood Manager is a supervisory position at Defendant.

25.     Seafood Manager is a management-level position at Defendant.

26.     In her capacity as Seafood Manager, Jarkovsky managed the Seafood Department at Store #176.

27.     As Seafood Manager, Jarkovsky served as Book's supervisor.

28.     Defendant employed Scott Dunlap ("Dunlap") from at least on or about August 1, 2021, and continuing through at least on or about January 14, 2022.

29.     As of approximately December 2021, Defendant had employed Dunlap for ten years.

30.     Dunlap's sex is male.

31.    From at least on or about August 1, 2021, and continuing through at least on or about January 14, 2022, Defendant employed Dunlap as Meat Manager at Store #176.

32.    Meat Manager is a supervisory position at Defendant.

33.    Meat Manager is a management-level position at Defendant.

34.    In his capacity as Meat Manager, Dunlap managed the Meat Department at Store #176.

35.    During Book's employment by Defendant, the Seafood Department and Meat Department at Store #176 were adjacent to each other and shared at least a kitchen, sink, walk-in cooler, and walk-in freezer.

36.    From on or about August 1, 2021, until on or about January 14, 2022, Book periodically performed work in the Meat Department at Store #176.

37.    As Meat Manager, Dunlap served as Book's supervisor.

38.    In his capacity as Meat Manager, Dunlap possessed authority to take tangible employment actions against Book, including but not limited to taking disciplinary action against her, recommending to another supervisor that disciplinary action be taken against her, assigning work shifts to her, approving assignments of work shifts to her, and assigning work duties to her.

39.    From on or about August 1, 2021, and continuing through on or about January 14, 2022, Defendant subjected Book to a continuing unlawful employment

practice in the form of an unwelcome and offensive hostile work environment because of her sex.

40.     On the day that they met at the beginning of her employment with Defendant, Dunlap draped Book in the jacket that he wore while performing work in the Meat Department, touching her while he did so. Book had not asked Dunlap to drape his jacket on her or otherwise invited him to do so. Dunlap's clothing of Book in his jacket was unwelcome and offended her.

41.     Dunlap frequently winked at Book in the workplace. Book had not asked that Dunlap wink at her or otherwise invited him to do so. Dunlap's winking at Book was unwelcome and offended her.

42.     On a weekly basis in or about November and December 2021, Dunlap frequently made sexual comments to Book and other employees while at work, including but not limited to the following:

a.     Dunlap bragged to Book and other employees that in a prior job he was frequently present when female college students were showering.

b.     Dunlap told Book and Jarkovsky that in a prior job he had convinced a female college student to place her mouth on a walking cane that was covered in the skin of a "bull penis." Dunlap stated that the female college student had "given a bull a blow job and didn't even know it."

c.      In Book's presence, Dunlap said to Jarkovsky that he "knew she [Jarkovsky] was holding a penis last week" because it had been her anniversary.

d.      Dunlap told Book and other employees that he and a friend had taken a trip to Atlantic City, New Jersey, during which his friend had hired sex workers for him (Dunlap) and that the sex workers had "worn him out."

e.      Dunlap told Book and other employees that he frequently visited strip clubs and that he wanted to take Book and other employees with him to a strip club. Dunlap discussed the strip-club dancers' appearances, including saying that one dancer with tattoos "made [him] go limp," referring to an erection, and that he did not mind that one dancer had a "flat ass."

43.    Book had not asked Dunlap to make the aforementioned sexual comments or otherwise invited him to do so. Dunlap's aforementioned conduct was unwelcome and offended Book.

44.    In or about November and December 2021, Dunlap directed sexual comments at Book in the workplace, including but not limited to the following:

a.      Dunlap compared eating oysters to "swallowing" during oral sex.

b.      Dunlap asked Book if she "swallowed" during oral sex. Book made a disgusted facial expression in response, and Dunlap told her that she was "giving [herself] away."

c.     On another occasion, Dunlap was unloading boxes from the walk-in cooler at the same time as Book and Jarkovsky, and he commented that there were "a lot of boobs and butts" in the walk-in cooler at that time.

45.   Book had not asked Dunlap to direct sexual comments at her or otherwise invited him to do so. Dunlap's directing of sexual comments at Book was unwelcome and offended her.

46.   Dunlap's course of conduct described above was open and pervasive, taking place frequently in front of multiple Defendant employees, including Jarkovsky.

47.   Dunlap engaged in nonconsensual, sexual touching of Book in the workplace:

a.     On or about December 17, 2021, Book brought Christmas cookies into work for employees of the Seafood Department and Meat Department at Store #176.

b.     Approximately several days later, Dunlap approached Book while she was alone.

c.     Dunlap leaned over Book, kissed her on the cheek, and said, "I bet your husband doesn't kiss you when you make him cookies."

d.     Book had not asked Dunlap to kiss her or otherwise invited him to do so. Dunlap's kissing of Book was unwelcome and offended her.

48. Dunlap also made a number of statements in the workplace that indicated a propensity for physical violence or threatening behavior:

a. Dunlap told Book that he had been jailed for attempting to murder his brother.

b. Dunlap told Book that his mother and brother had orders of protection against him.

c. Dunlap stated that in a prior job he had convinced a coworker to quit by biting down on a cow's eyeball and squirting the coworker with eye liquid.

49. Book had not asked Dunlap to direct the aforementioned threatening comments to her or otherwise invited him to do so. Dunlap's directing of threatening comments at Book was unwelcome and offended her.

50. Jarkovsky personally observed Dunlap's unwelcome and offensive sex-based conduct in the workplace.

51. Jarkovsky did not report Dunlap's unwelcome and offensive sex-based conduct to Store Manager of Store #176, John Walker ("Walker"), any other more senior management-level and supervisory employee of Defendant, or a member of Defendant's human-resources personnel at any time prior to December 24, 2021.

52. On or about December 24, 2021, Book reported Dunlap's offensive and unwelcome conduct to Walker.

53.   Book subsequently wrote and submitted a "Witness Statement Form," dated December 26, 2021, stating, in part, that Dunlap had kissed her on the cheek; repeatedly winked at her in the workplace; compared eating oysters to "swallowing" during oral sex; told a story in which he and a friend of his had hired sex workers in Atlantic City; told a story in which, in a prior job that he had held, he had convinced a female college student to place her mouth on a walking cane that was covered in the skin of a "bull penis"; stated that there were "a lot of boobs and butts" in the walk-in cooler; stated that employees in the Bakery Department at Store #176 had "fat asses"; and shouted at Jarkovsky that she was "looking at Jonny's [a male coworker's] junk," referring to the male coworker's penis.

54.   Dunlap subsequently admitted to Defendant that he engaged in some of the conduct detailed by Book in her complaint, including kissing Book on the cheek, winking at her, and telling Book and others about his trip to Atlantic City that involved sex workers.

55.   Thereafter, Defendant determined that Dunlap had violated its sexual harassment policy, stating in a written warning (styled "Final Notice") to Dunlap, "Scott has admitted to inappropriate behavior towards a female associate. Scott was telling inappropriate stories and gave a female associate a kiss on the cheek that was not asked for. These actions created an uncomfortable situation for the female

associate as well as other employees. These actions violate our sexual harassment policy and respectful workplace policy."

56.     The "Final Notice," dated January 14, 2022, that Defendant issued to Dunlap states, in part, "Prior counseling or notices about performance/behavior in the past 12 months (verbal/written, dates): 01/02/2021 – Written Notice for inappropriate behavior and comments towards a female associate."

57.     During the three-week period between Book's sexual harassment complaint against Dunlap on or about December 24, 2021, and Defendant's issuance of its written warning to Dunlap on or about January 14, 2022, Defendant permitted Dunlap to retain his management-level and supervisory position as Meat Manager at Store #176.

58.      During the three-week period between Book's sexual harassment complaint against Dunlap on or about December 24, 2021, and Defendant's issuance of its written warning to Dunlap on or about January 14, 2022, Defendant permitted Dunlap to continue working alongside Book and other female employees.

59.     In or about early January 2022, Defendant threw Dunlap a party in the workplace celebrating his ten-year tenure as an employee of Defendant.

60.     The written warning that Defendant issued to Dunlap provided that he would be transferred to another store, required to read Defendant's sexual

harassment policy and take an online training module, and must participate in Defendant's Employee Assistance Program ("EAP") counseling sessions.

61.    Defendant took no other corrective or remedial action against Dunlap in response to Book's sexual harassment complaint.

62.    Defendant did not suspend, demote, or discharge Dunlap in response to Book's sexual harassment complaint.

63.    However, Defendant subsequently disciplined and discharged Book.

64.    On or about June 2, 2022, Defendant's Regional Human Resources Manager Jonni Allen ("Allen"), District Human Resource Talent Manager Jeremy Lumadue ("Lumadue"), and Assistant Store Manager Nikki Watkins ("Watkins") called Book into a meeting. Shift Supervisor Catherine (Kate) Crozier ("Crozier") also attended the meeting.

65.    During the meeting, Lumadue told Book that multiple coworkers had complained that she was creating a "hostile work environment." In that regard, Lumadue told Book that coworkers had complained that they were afraid that she (Book) was going to report them (the coworkers) to Defendant for engaging in unspecified misconduct in the workplace.

66.    Lumadue stated that because of these coworkers' complaints, Defendant was requiring her to complete an EAP referral as a condition of her continued employment with Defendant.

67.     Lumadue also told Book that she had 24 hours to contact ComPsych Corporation ("ComPsych"), Defendant's EAP provider, to initiate the EAP process and that she could not return to work until she had done so.

68.     During the meeting, Book was provided with an EAP form titled, "Authorization Form: Formal Referral" ("Authorization Form") that Lumadue himself had partially completed, and he directed Book to complete and submit it to initiate the EAP process.

69.     If Book had completed and submitted it, the Authorization Form would have authorized "ComPsych's Clinical Staff" to release to Defendant clinical records that ComPsych maintained about Book, including but not limited to clinical records about her "Treatment recommendations," "Compliance/Non-compliance with recommendations," and "Completion of treatment recommendations." The Authorization Form also discussed certain of the signer's rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and HIPAA regulations.

70.     Defendant required Book to participate in its EAP program, and execute the Authorization Form, as a condition of continuing her employment by Defendant.

71.     Defendant's EAP program, as relevant to its mandatory referral of Book, consists of mental-health counseling services provided by licensed clinicians.

72.    During the meeting, Book specifically asked Allen, Lumadue, and Watkins if she needed to complete and submit the Authorization Form and complete the EAP referral so that Defendant could determine whether she needed to take disability-related leave.

73.    In response to Book's question as to whether the mandatory EAP referral was needed to determine whether she needed to take disability-related leave, Allen looked at Book and nodded her head in the affirmative. Lumadue, Watkins, and Crozier did not respond to either Book or Allen.

74.    Book understood at that time that she would be discharged if she did not comply with Defendant's EAP referral.

75.    During the meeting, Book specifically questioned the need for her to be subject to a mandatory EAP referral and why other employees had not been referred to EAP as well.

76.    After the meeting on or about June 2, 2022, Book did not complete or submit the Authorization Form.

77.    After the meeting on or about June 2, 2022, Book did not contact ComPsych to initiate the EAP process.

78.    After the meeting on or about June 2, 2022, Book did not complete the EAP referral.

79.    Book refused to complete or submit the Authorization Form, contact ComPsych to initiate the EAP process, or complete the EAP referral because she believed that Defendant was invading her rights, including but not limited to her right to medical privacy, and would use any health information obtained through the EAP process to unlawfully discharge her from employment.

80.    Between on or about June 2, 2022, and on or about June 6, 2022, Book worked one or more days at Store #176.

81.    On or about June 6, 2022, Book told Lumadue that she was not going to submit to Defendant's mandatory EAP referral.

82.    After Book told Lumadue on or about June 6, 2022, that she was not going to submit to Defendant's mandatory EAP referral, Defendant suspended Book without pay.

83.    After Defendant suspended Book without pay on or about June 6, 2022, Defendant did not rescind its unpaid suspension of Book.

84.    On or about June 17, 2022, Defendant discharged Book from her employment.

85.    Defendant discharged Book because she refused to complete and submit the Authorization Form and because she refused to participate in Defendant's mandatory EAP referral.

**COUNT I: Hostile Work Environment Because of Sex in Violation of Title VII**

86.     The Commission incorporates by reference all allegations set forth in Paragraphs 1–85, above.

87.     Defendant subjected Book to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of her sex (female).

88.     The discriminatory practices described above were unwelcome and offensive.

89.     The discriminatory practices described above were because of sex.

90.     The discriminatory practices described above were subjectively and objectively hostile or abusive, thereby altering the terms or conditions of Book's employment by Defendant.

91.     Defendant is vicariously liable for the harassing conduct of its supervisory employee, Meat Manager Scott Dunlap.

92.     Alternatively, Defendant is directly liable for its failure to take action in response to sexually harassing conduct of which it knew or reasonably should have known that was reasonably calculated to ending such conduct and preventing its reoccurrence.

93.     The effect of the practices complained of in Paragraphs 86–92, above, has been to deprive Book of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

94.     The unlawful employment practices complained of above were intentional.

95.     The unlawful employment practices complained of above were done with malice or reckless indifference to Book's federally protected rights.

### COUNT II: Unlawful Medical Examination and Disability-Related Inquiries in Violation of the ADA

96.     The Commission incorporates by reference all allegations set forth in Paragraphs 1–85, above.

97.     Defendant subjected Book to unlawful employment practices in violation of Section 102(d)(4)(A) of the ADA, 42 U.S.C. § 12112(d)(4)(A), by requiring her to undergo a medical examination and making inquiries of her as to whether she was an individual with a disability or as to the nature or severity of such disability.

98.     Defendant's mandate that Book complete and submit the Authorization Form and complete the EAP referral as a condition of her continued employment with Defendant—if Book had complied with the mandate—was reasonably likely to elicit information revealing to Defendant whether Book was an individual with a disability and, if so, about the nature or severity of such disability.

99.    At no time before or after the meeting on or about June 2, 2022, did Defendant ever possess objective evidence creating a reasonable belief that Book's ability to perform one or more essential functions of her job was impaired by a medical condition.

100.    At no time before or after the meeting on or about June 2, 2022, did Defendant ever possess objective evidence creating a reasonable belief that Book posed a direct threat within the meaning of Section 101(3) of the ADA, 42 U.S.C. § 12111(3), because of a medical condition.

101.    Defendant's mandate that Book complete and submit the Authorization Form and complete the EAP referral as a condition of her continued employment with Defendant was not job related.

102.    Defendant's mandate that Book complete and submit the Authorization Form and complete the EAP referral as a condition of her continued employment with Defendant was not consistent with business necessity.

103.    The effect of the practices complained of in Paragraphs 96–102, above, has been to deprive Book of equal employment opportunities and otherwise adversely affect her status as an employee because of such practices.

104.    The unlawful employment practices complained of above were intentional.

105.   The unlawful employment practices complained of above were done with malice or reckless indifference to Book's federally protected rights.

### COUNT III: Discharge Because of Refusal to Submit to Unlawful Medical Examination and Disability-Related Inquiries in Violation of the ADA

106.   The Commission incorporates by reference all allegations set forth in Paragraphs 1–85, above.

107.   Defendant subjected Book to unlawful employment practices in violation of Sections 102(a) and 102(d)(4)(A) of the ADA, 42 U.S.C. §§ 12112(a) & 12112(d)(4)(A), by discharging her because of her refusal to submit to a medical examination and unlawful disability-related inquiries.

108.   The effect of the practices complained of in Paragraphs 106–07, above, has been to deprive Book of equal employment opportunities and otherwise adversely affect her status as an employee because of such practices.

109.   The unlawful employment practices complained of above were intentional.

110.   The unlawful employment practices complained of above were done with malice or reckless indifference to Book's federally protected rights.

### COUNT IV: Discharge in Retaliation for Protected Activity in Violation of the ADA

111.   The Commission incorporates by reference all allegations set forth in Paragraphs 1–85 and 96–110, above.

112.   Defendant subjected Book to unlawful employment practices in violation of Section 503(a) of the ADA, 42 U.S.C. § 12203(a), by discharging her because of her protected opposition to employment practices made unlawful by the ADA in the manner described in Paragraphs 64–85, above.

113.   The effect of the practices complained of in Paragraphs 111–12, above, has been to deprive Book of equal employment opportunities and otherwise adversely affect her status as an employee because of her conduct protected under Section 503(a) of the ADA, 42 U.S.C. § 12203(a).

114.   The unlawful employment practices complained of above were intentional.

115.   The unlawful employment practices complained of above were done with malice or reckless indifference to Book's federally protected rights.

### COUNT V: Coercion, Intimidation, Threats, and Interference with the Exercise or Enjoyment of Rights Granted or Protected by the ADA

116.   The Commission incorporates by reference all allegations set forth in Paragraphs 1–85 and 96–115, above.

117.   Defendant subjected Book to unlawful employment practices in violation of Section 503(b) of the ADA, 42 U.S.C. § 12203(b), by coercing, intimidating, threatening, and interfering with her in the exercise and enjoyment of rights granted or protected by the ADA in the manner described in Paragraphs 64–85, above, including the rights to be free from unlawful medical examinations and disability-

related inquiries and conditioning of employment on acquiescence to the same, to oppose such practices, and to not be subjected to discharge and other adverse action because of refusal to acquiesce to unlawful medical examinations and disability-related inquiries.

118.   The effect of the practices complained of in Paragraphs 116–17, above, has been to deprive Book of equal employment opportunities and otherwise adversely affect her status as an employee because of her exercise or enjoyment of rights granted or protected by the ADA, which itself is protected under Section 503(b) of the ADA, 42 U.S.C. § 12203(b).

119.   The unlawful employment practices complained of above were intentional.

120.   The unlawful employment practices complained of above were done with malice or reckless indifference to Book's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining and restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in sex discrimination or retaliation, including maintaining a hostile work environment based on sex, and subjecting employees to medical examinations or inquiries as to whether they are individuals with a disability or as to the nature or

severity of such disability when the medical examinations and inquiries are neither job-related nor consistent with business necessity; discharging employees because of their refusal to submit to unlawful medical examinations and unlawful disability-related inquiries; discharging employees in retaliation for engaging in activities protected under Section 503(a) of the ADA; coercing, intimidating, threatening, and interfering with employees in the exercise or enjoyment of rights granted or protected by the ADA under Section 503(b) of the ADA; and any other employment practice which discriminates on the basis of sex or statutorily protected activity.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female employees, employees whom Defendant subjects to medical examinations or inquiries as to whether they are individuals with a disability or as to the nature or severity of such disability, employees who have engaged in activities protected under Section 503(a) of the ADA, and employees who have engaged in activities protected under Section 503(b) of the ADA, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make whole Charging Party Elizabeth Book by providing appropriate back pay with prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its

unlawful suspension and discharge of Book, including but not limited to reinstate-ment with retroactive seniority and benefits or front pay in lieu thereof.

D.      Order Defendant to make whole Charging Party Elizabeth Book by providing compensation for past and future pecuniary losses resulting from the un-lawful employment practices described in Paragraphs 14–119, above, in amounts to be determined at trial.

E.      Order Defendant to make whole Charging Party Elizabeth Book by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in Paragraphs 14–119, above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

F.      Order Defendant to pay Charging Party Elizabeth Book punitive dam-ages for the malicious and reckless conduct described in Paragraphs 14–119, above, in an amount to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

KARLA GILBRIDE
GENERAL COUNSEL

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL
WASHINGTON, D.C.

By GAM
per authorization

DEBRA M. LAWRENCE
REGIONAL ATTORNEY
EEOC – Philadelphia District Office

By GAM
per authorization

RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY
OH Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6714
Fax: (443) 992-7880
Email: ronald.phillips@eeoc.gov

GREGORY A. MURRAY
SENIOR TRIAL ATTORNEY
PA Bar No. 316144
EEOC – Pittsburgh Area Office
William S. Moorhead Federal
    Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6907
Fax: (412) 395-5749
Email: gregory.murray@eeoc.gov


DELANEY E. ANDERSON
TRIAL ATTORNEY
MD Bar No. 2112140015
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6742
Fax: (443) 992-7880
Email: delaney.anderson@eeoc.gov