# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**,

Plaintiff,

v.

**WEIS MARKETS, INC.**,

Defendant.

Case No. 1:23-cv-01767-YK
(Hon. Yvette Kane)

### CONSENT DECREE

### INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission ("the Commission") instituted this action on October 25, 2023, against Defendant Weis Markets, Inc. ("Defendant"), alleging claims under Title VII of the Civil Rights of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e to 2000e-17; Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 42 U.S.C. §§ 12101–17, 12201–13; and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Specifically, the Commission alleged that Defendant subjected Charging Party Elizabeth Book to a hostile work environment because of her sex (female) in violation of Title VII; an unlawful medical examination and disability-related inquires in violation of the ADA; discharge because of her refusal to comply with the unlawful medical examination and disability-related inquiries in violation of the ADA; discharge in retaliation for her protected

opposition to unlawful employment practices in violation of the ADA; and coercion, intimidation, threats, and interference with her exercise or enjoyment of ADA rights in violation of the ADA. Defendant filed its Answer to the Commission's Complaint on November 16, 2023, and denies liability. There has been no adjudication of any liability issues in this case.

In the interest of resolving this case without the time, expenditure, and risk of contested litigation, and as a result of having engaged in comprehensive settlement negotiations, the Commission and Defendant (collectively, "the Parties") have agreed that this action should be finally resolved by entry of this Consent Decree ("the Decree"). The Parties agree that this Decree fully and finally resolves the Title VII and ADA claims stated in the Complaint. This Decree shall not constitute or be construed as an admission by Defendant of any violation of Title VII or the ADA.

<u>STIPULATIONS</u>

1.      The Parties stipulate to the following:

(a)     The United States District Court for the Middle District of Pennsylvania has jurisdiction over the subject matter of this action and the Parties to this action for purposes of entering this Decree and, if necessary, enforcing this Decree;

(b)     Venue is proper in the United States District Court for the Middle District of Pennsylvania for purposes of entering this Decree and any proceedings related to enforcement of this Decree; and

2

(c)     All conditions precedent to the institution of this action have been fulfilled.

FINDINGS

2.     Having carefully examined the terms of this Decree, and based on the pleadings, record, and stipulations of the Parties, the Court finds the following:

(a)     This Court has jurisdiction over the Parties and the subject matter of this action;

(b)     The terms of this Decree are adequate, fair, reasonable, equitable, and just. The rights of the Parties and Charging Party Elizabeth Book, and the public interest are adequately protected by this Decree; and

(c)     This Decree conforms with the Federal Rules of Civil Procedure, Title VII, and the ADA, and is not in derogation of the rights or privileges of any person. The entry of this Decree will further the objectives of Title VII and the ADA, and will be in the best interests of the Parties, Charging Party Elizabeth Book, and the public.

## NOW, THEREFORE, IT IS ORDERED,
## ADJUDGED, AND DECREED THAT:

### DEFINITIONS

3.     *Complaint:* The term *complaint* shall mean any allegation or report made by any person, whether or not substantiated by evidence, whether or not made in conformity with Defendant's established procedures (so long as knowledge of the complaint may be imputed to Defendant), made by any means of communication, regarding potential discrimination, harassment, or retaliation committed by any employee, officer, director, or owner of Defendant.

4.     *Days:* The term *days* shall mean calendar days unless business days are clearly specified in a specific provision of the Decree. If any deadline referenced in this Decree shall fall on a weekend or federal holiday, the deadline shall be moved to the next business day.

5.     *EAP:* The term *EAP* shall mean Defendant's employee assistance program in effect in the Region.

6.     *Employee:* The term *employee* shall be construed in accordance with controlling caselaw defining the meaning of the terms *employer* and *employee* under Title VII and the ADA. The term *employee* shall specifically include all full-time, part-time, casual, seasonal, temporary, and permanent employees of Defendant.

7.     *Effective Date:* The term *Effective Date* shall refer to the date that the Court approves and enters the Decree as a final order.

8.     *Region:* The term *Region* shall mean Defendant's locations, operations, and employees in the geographic area over which Jonni Allen had managerial, supervisory, or other operational responsibilities for any length of time between January 1, 2021, and the Effective Date,[1] as well as any human-resources and other business operations that relate to Defendant's locations, operations, and employees in the geographic area over which Ms. Allen had managerial, supervisory, or other operational responsibilities for any length of time between January 1, 2021, and the Effective Date, regardless of the geographic location of those human-resources and other business operations.

9.     *Store 35: Store 35* means Defendant's store located at 224 North Logan Boulevard, Burnham, Pennsylvania 17009.

10.     *Store 176: Store 176* means Defendant's store located at 4521 William Penn Highway, Mifflintown, Pennsylvania 17059.

## EFFECTIVE DATE, DURATION AND GEOGRAPHIC SCOPE OF DECREE, AND RETENTION OF JURISDICTION

11.     This Decree shall become effective immediately upon the Effective Date and shall remain in effect until its expiration date, which shall be three (3) years immediately following entry of the Decree, provided, however, that if at the end of the three-year (3-year) period, any dispute under Paragraphs 45 and 46, below,

---

[1] The locations and operations that fall within this Section are the locations listed in the attached Exhibit A.

remains unresolved, the terms of the Decree shall be automatically extended until the Parties resolve the dispute or the Court's final disposition of the dispute, whichever is earlier.

12.    Unless otherwise specified below, the provisions of this Decree shall apply to all of Defendant's facilities, worksites, and other locations in the Region, as well as any business operations related thereto irrespective of physical location.

13.    For the duration of this Decree, this Court shall retain jurisdiction over this action to enforce the terms of the Decree and shall have all available remedies to enforce the Decree, including but not limited to monetary sanctions and injunctive relief.

14.    Resolution of this case pursuant to this Decree is not conditioned on Ms. Book waiving or releasing any claims or rights other than the Title VII and ADA claims that the Commission has pleaded in its Complaint (ECF No. 1) in the above-styled and numbered action.

<u>INJUNCTIONS</u>

15.    Defendant, its owners, officers, directors, agents, employees, successors, assigns, and all persons in active concert or participation with Defendant are enjoined from engaging in any employment practice that discriminates on the basis of sex, including but not limited to (a) creating, facilitating, or tolerating the existence of a hostile work environment because of sex; or (b) taking any adverse action,

or subjecting any employee to an adverse alteration in the terms or conditions of employment, because of sex.

16.     Defendant, its owners, officers, directors, agents, employees, successors, assigns, and all persons in active concert or participation with Defendant are enjoined from requiring employees to participate in the EAP as a condition of their continuing employment or receipt of terms, benefits, and privileges of employment when such EAP participation would have the effect of subjecting employees to medical examinations, or inquiries as to whether employees are individuals with disabilities or as to the nature or severity of the disabilities, that are not job-related and consistent with business necessity.

17.     Defendant, its owners, officers, directors, agents, employees, successors, assigns, and all persons in active concert or participation with Defendant are enjoined from subjecting employees to any adverse employment action because the employees refused or failed to participate in the EAP if such EAP participation would have the effect of subjecting employees to medical examinations, or inquiries as to whether employees are individuals with disabilities or as to the nature or severity of the disabilities, that are not job-related and consistent with business necessity.

18.     Defendant, its owners, officers, directors, agents, employees, successors, assigns, and all persons in active concert or participation with Defendant are enjoined from engaging in any form of retaliation against any person because such

person has (a) opposed any practice made unlawful or reasonably believed to be unlawful under Title VII, the ADA, or both; (b) filed a charge of discrimination under Title VII, the ADA, or both; or (c) testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under Title VII, the ADA, or both.

MONETARY RELIEF

19.     Within ten (10) days of the Effective Date, Defendant shall pay seventy-five thousand dollars ($75,000.00) to Charging Party Elizabeth Book, which shall constitute compensatory damages for emotional distress.

20.     The payment to Ms. Book required by Paragraph 19, above, shall be completed using one check for the amount constituting compensatory damages. Defendant shall not make any payroll-tax withholdings from the amount paid pursuant to this Paragraph. The check shall be made payable to "Elizabeth Book."

21.     Defendant will deliver the check for monetary relief required by Paragraph 20, above, to Ms. Book via certified U.S. mail (with a return receipt requested) or express overnight delivery at an address to be provided by the Commission. Defendant will transmit photocopies of the check and proof of delivery to the Commission to the attention of Gregory A. Murray, Senior Trial Attorney, U.S. Equal Employment Opportunity Commission, Pittsburgh Area Office, William S. Moorhead Federal Building, 1000 Liberty Avenue, Suite 1112, Pittsburgh, Pennsylvania

8

15222, gregory.murray@eeoc.gov within five (5) days of the date of delivery of the check to Ms. Book.

22.     In the event that Defendant is unable to successfully make delivery of the check required by Paragraph 20, above, Defendant shall promptly notify the Commission of that fact, confer with the Commission about alternative methods of delivery, and then exercise reasonable diligence to attempt successful delivery of the check by alternate methods.

23.     At the time that such tax documents are issued to other persons, Defendant shall issue to Charging Party Elizabeth Book an IRS Form 1099-MISC for the monetary relief amount constituting compensatory damages.

<u>EAP POLICIES AND PROCEDURES</u>

24.     Within fourteen (14) days of the Effective Date, Defendant shall create a policy concerning mandatory EAP referral of employees and medical examinations and disability-related inquiries regulated by the ADA (hereinafter, collectively referred to as "EAP Policies"), which EAP Policies shall be submitted to the Commission for review before implementation by Defendant. The EAP Policies shall comply with the ADA and include at least the following minimum content:

(a)     a prohibition against requiring that Defendant's employees participate in the EAP where such mandatory participation would result in a medical examination or disability-related inquiry that is not job-related and consistent with business

necessity, i.e., that is not supported by a reasonable belief, based on objective evidence, that the referred employee's ability to perform one or more essential job functions is impaired by a medical condition or that the referred employee poses a direct threat to the health or safety of the referred employee or others due to a medical condition;

(b)     a requirement that when Defendant makes a mandatory EAP referral of an employee, the referring employee or other agent must, in consultation with the EAP provider, exercise reasonable care to evaluate whether the mandatory EAP referral may result in a medical examination or disability-related inquiry regulated by the ADA and must document that evaluation and the conclusion(s) reached in writing, including all information and sources of information (e.g., witness statements, statements by the EAP provider, documents, etc.);

(c)     a requirement that when Defendant makes a mandatory EAP referral of an employee and the referral may result in a medical examination or disability-related inquiry regulated by the ADA, the referring employee or other agent must exercise reasonable care to evaluate whether such medical examinations or disability-related inquiries are supported by a reasonable belief, based on objective evidence, that the referred employee's ability to perform one or more essential job functions is impaired by a medical condition or that the referred employee poses a direct threat to the health or safety of the referred employee or others due to a medical condition

and must document that evaluation and the conclusion(s) reached in writing, including all information and sources of information (e.g., witness statements, statements by the EAP provider, documents, etc.);

(d)     a requirement that when Defendant makes a mandatory EAP referral of an employee that is not otherwise prohibited by the EAP Policies, and when such mandatory EAP referral is not prohibited as set forth in Paragraph 24(a), above, the referring employee or other agent must, in consultation with the EAP provider, exercise reasonable care to ensure that any resulting medical examinations or disability-related inquiries in which the mandatory EAP referral would result are limited in scope to only such examinations or inquires that are needed to make an assessment of the referred employee's ability to work, i.e., are no broader than necessary to determine whether the referred employee can perform one or more essential job functions or whether the referred employee poses a direct threat to the health or safety of the employee or others;

(e)     a prohibition against requiring that Defendant's employees authorize a release of records to Defendant concerning mandatory EAP referrals unless such release of records to Defendant is job-related and consistent with business necessity, i.e., necessary to determine whether the referred employee's ability to perform one or more essential job functions is impaired by a medical condition or whether the

referred employee poses a direct threat to the health or safety of the referred employee or others due to a medical condition;

(f)    a requirement that when Defendant requires an employee to authorize release of mandatory EAP referral records, the employee or other agent imposing such a requirement must exercise reasonable care to ensure that any resulting release of records or information to Defendant is limited in scope to only such records and information that are necessary to determine whether the referred employee can perform one or more essential job functions or whether the referred employee poses a direct threat to the health or safety of the employee or others;

(g)    a requirement that Defendant must retain the written records required by Paragraph 24(b) and (c), above; and

(h)    a requirement that Defendant's employees with authority to recommend, require, or rescind medical examinations or disability-related inquiries, or mandatory EAP referrals, of employees must receive the training required by Paragraph 29, below.

25.    Within fourteen (14) days of the Effective Date, Defendant shall send copies of the EAP Policies referenced in Paragraph 24, above, to the Commission for review. Thereafter, the Commission shall be afforded a period of fourteen (14) days to conduct a pre-implementation review of the EAP Policies and provide any comments concerning the EAP Policies or their implementation that the Commission

deems to be warranted. Upon request by the Commission, Defendant shall confer in good faith with the Commission concerning the EAP Policies and any Commission comments thereto.

26.    Subject to any motion filed by the Commission pursuant to Paragraph 45, below, within forty-five (45) days of the Effective Date, Defendant shall implement and adhere to the EAP Policies. To implement the EAP Policies, Defendant shall distribute the EAP Policies to current employees with authority to require or rescind medical examinations or disability-related inquiries, or mandatory EAP referrals, of employees; authority to formulate or implement policies and procedures concerning the EAP; authority to formulate or implement policies and procedures concerning compliance with the ADA; and Human Resources employees.

27.    Within ten (10) days of the date that Defendant implements the EAP Policies set forth in Paragraph 24, above, Defendant shall send the Commission a copy of the final EAP Policies implemented by Defendant and certify, in writing to the Commission, that the EAP Policies have been implemented in the manner set forth above.

<u>TITLE VII, ADA, AND EAP TRAINING</u>

28.    Within thirty (30) days of the Effective Date, Defendant shall provide no fewer than two (2) hours of mandatory training on Title VII, the ADA, Defendant's policies and procedures concerning Title VII and the ADA, and proficient,

lawful methods and techniques for conducting investigations and responding to em-
ployee complaints of discrimination and harassment to any of Defendant's employ-
ees with authority to investigate or respond to employee complaints of discrimina-
tion and harassment at Store 35 or Store 176, including but not limited to any human-
resources employees with authority to investigate or respond to employee com-
plaints of discrimination and harassment at Store 35 or Store 176, regardless of the
geographic location of those human-resources employees. This training shall be con-
ducted live and involve an interactive component, though attendance may be by re-
mote means. The training content shall accurately convey Title VII and ADA re-
quirements and proficient, lawful methods and techniques for conducting investiga-
tions and responding to employee complaints of discrimination and harassment. At
a minimum, the training shall include a discussion of the following topics:

(a)     Defendant's policies and procedures concerning Title VII and the ADA
in effect on the Effective Date;

(b)     Defendant's procedures for reporting, investigating, and responding to
allegations of discrimination, harassment, and retaliation;

(c)     Defendant's requirement that all managerial and supervisory employ-
ees have a duty under Defendant's policies and procedures concerning Title VII and
the ADA to promptly report any and all complaints or observations of alleged dis-
crimination, harassment, or retaliation to a Store Manager or Human Resources, and

that failure to carry out this duty shall be grounds for disciplinary action, up to and including immediate discharge from employment;

(d)     an acknowledgment that information regarding past complaints, allegations, investigations, or findings of discrimination, harassment, or retaliation of a similar nature and involving the same individual then-being investigated shall be considered highly relevant evidence in any pending investigation;

(e)     Defendant personnel conducting investigations into allegations of discrimination, harassment, or retaliation are required to research whether such past complaints, investigations, or findings exist by reviewing all records available to them;

(f)     Defendant's former employees may be sources of highly relevant evidence and should be contacted during investigations, if appropriate;

(g)     appropriate techniques for gathering facts and assessing witness credibility, particularly but not exclusively for situations in which there is conflicting testimony or an absence of corroboration;

(h)     the need to investigate whether corroborative evidence exists, but an acknowledgement that corroborative evidence is not required to make a finding that allegations of discrimination, harassment, or retaliation are substantiated or well founded;

(i)      the need to ensure that, in response to employee complaints of discrimination, harassment, or retaliation, Defendant undertakes corrective action reasonably calculated to end any discriminatory, harassing, or retaliatory conduct and to prevent its reoccurrence;

(j)      the disciplinary consequences for employees, including managerial and supervisory employees, found to be in violation of Defendant's policies and procedures concerning Title VII, the ADA, or both;

(k)      the need for Defendant to know the full content of any corrective action that it undertakes in response to employee complaints of discrimination, harassment, or retaliation, so that Defendant can knowledgeably determine that such corrective action is reasonably calculated to end any discriminatory, harassing, or retaliatory conduct and to prevent its reoccurrence, particularly but not exclusively for situations in which the corrective action involves mandatory EAP referral;

(l)      post-investigation procedures for monitoring the work environment, including but not limited to conducting follow-up interviews of employees and explicitly asking such persons whether any discrimination, harassment, or retaliation of a similar type to that investigated is ongoing or has taken place since the original complaint;

(m)    the need to monitor and audit any post-complaint or -investigation personnel actions taken against any complainants or witnesses to any investigations to ensure that retaliation is not taking place;

(n)    the need to document complaint investigations, including taking and retaining notes of interviews conducted and fully documenting questions and answers; and

(o)    Defendant's record-retention obligations under this Decree relating to any discrimination, harassment, or retaliation complaints or investigations.

29.    Within thirty (30) days of the date that Defendant implements the EAP Policies set forth in Paragraph 24, above, Defendant shall provide no fewer than one (1) hour of mandatory training on the ADA, Defendant's EAP Policies, and appropriate, lawful uses of medical examinations and disability-related inquiries of employees to Defendant's employees with authority to recommend, require, or rescind medical examinations or disability-related inquiries, or mandatory EAP referrals, of employees. This training shall be conducted live and involve an interactive component, though attendance may be by remote means. The training content shall accurately convey ADA requirements; appropriate, lawful uses of medical examinations and disability-related inquiries of employees; and appropriate, lawful uses of mandatory EAP referrals of employees. At a minimum, the training shall include a discussion of the following topics:

(a)     the definition of *disability* under the ADA as a physical or mental impairment that substantially limits one or more major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment;

(b)     the potential for medical examinations or disability-related inquiries of employees to reveal not only employees' currently existing physical or mental impairments, but also records of employees' past physical or mental impairments;

(c)     a medical examination is a procedure or test that seeks information about an individual's physical or mental impairments or health, including factors that are relevant in determining whether a procedure or test is a medical examination, examples of procedures and tests that are considered to be medical examinations, and examples of procedures and tests that are not considered to be medical examinations;

(d)     a disability-related inquiry is a question (or series of questions) that is likely to elicit information about a disability, including examples of questions that are considered to be disability-related inquiries and examples of questions that are not considered to be disability-related inquiries;

(e)     all medical examinations and disability-related inquiries of employees must be job-related and consistent with business necessity, including the need to satisfy the job-related and consistent-with-business-necessity requirements independently;

(f)     the difference between essential job functions and marginal job functions, including factors that are relevant in determining whether a job function is essential or marginal;

(g)     medical examinations and disability-related inquiries are job-related when they concern whether an employee can perform an essential, not a marginal, job function because of a medical condition;

(h)     medical examinations and disability-related inquiries are consistent with business necessity when they are vital to the conduct of an employer's business, as opposed to being merely convenient to the conduct of an employer's business;

(i)     the circumstances under which employers can lawfully require employees to undergo medical examinations or answer disability-related inquiries, including when an employer has a reasonable belief, based on objective evidence, that an employee's ability to perform one or more essential job functions is impaired by a medical condition or that an employee poses a direct threat to the health or safety of the employee or others due to a medical condition;

(j)     medical examinations and disability-related inquiries of employees, in order to satisfy the job-related and consistent-with-business-necessity requirements, must be limited in scope to what is needed to make an assessment of the employee's ability to work, i.e., must be no broader than necessary to determine whether an

employee can perform one or more essential job functions or whether an employee poses a direct threat to the health or safety of the employee or others;

(k)    the fact that employees' participation in the EAP may result in a medical examination or disability-related inquiry regulated by the ADA;

(l)    Defendant's policy prohibiting mandatory employee participation in the EAP;

(m)    requiring employees to release to Defendant records concerning medical examinations or disability-related inquiries, including but not limited to EAP records related to such exams or inquiries, must be job-related and consistent with business necessity;

(n)    the scope of any records that employees are required to release to Defendant concerning medical examinations or disability-related inquiries, including but not limited to EAP records related to such exams or inquiries, must be job-related and consistent with business necessity;

(o)    all information obtained in medical examinations and disability-related inquiries of employees must be kept confidential and separate from personnel records; and

(p)    the procedures required by Paragraph 24, above.

30.    Defendant shall select one or more qualified Defendant employees or third parties to conduct the trainings described in Paragraphs 28 and 29, above. At

least fourteen (14) days before the date that Defendant intends to conduct the trainings described in Paragraphs 28 and 29, above, Defendant shall submit to the Commission for review (a) the name(s) of the instructors that Defendant has selected for the trainings and a brief description of their qualifications to conduct the trainings (e.g., job title, education, training, and/or experience); (b) copies of the proposed training materials; and (c) a list of all persons (by name and job title) who will be required to attend the trainings.

31.    After Defendant transmits to the Commission the information set forth in Paragraph 30, above, the Commission shall be afforded a period of fourteen (14) days to conduct a pre-implementation review of the proposed instructors and training curricula and provide any comments concerning the trainings that the Commission deems to be warranted. Upon request by the Commission, Defendant shall confer in good faith with the Commission concerning the trainings and any Commission comments.

32.    Subject to any motion filed by the Commission pursuant to Paragraph 45, below, within seventy-five (75) days of the Effective Date, Defendant shall conduct the trainings set forth in Paragraphs 28 and 29, above. Defendant shall maintain attendance logs for all persons who attend the trainings and retain such attendance logs for the duration of this Decree.

33.    Within ten (10) days of the date that Defendant conducts the trainings described in Paragraphs 28 and 29, above, Defendant shall send the Commission a copy of the final training curricula for each training, a list of all persons (by name and job title) who attended each training, and a list of persons to whom Defendant is required by this Decree to present such training but who did not receive it.

34.    For the duration of this Decree, Defendant shall also provide the training described in Paragraph 28, above, to any new Defendant employees who assume responsibility for investigating or responding to employee complaints of discrimination and harassment at Store 35 or Store 176, including but not limited to any new human-resources employees who assume responsibility for investigating or responding to employee complaints of discrimination and harassment at Store 35 or Store 176, regardless of the geographic location of those new human-resources employees, after the initial training date. This training shall be held within thirty (30) days of the date that such individual(s) start in their new positions or duties.

35.    For the duration of this Decree, Defendant shall also provide the training described in Paragraph 29, above, to any new Defendant employees who assume responsibility for recommending, requiring, or rescinding medical examinations or disability-related inquiries, or mandatory EAP referrals, of employees in the Region after the initial training date. This training shall be held within thirty (30) days of the date that such individual(s) start in their new positions or duties.

## REPORTING PROVISIONS

36.   For the duration of this Decree, Defendant shall furnish reports to the Commission semi-annually following the Effective Date concerning any lawsuits, charges, complaints, grievances, or other allegations (oral or written, formal or informal, verified or unverified) made by any employee alleging sexual harassment by Scott Dunlap received after the Effective Date, if any. Each such report shall contain the following:

(a)   the full name, last known residence address, last known telephone number(s), and last known email address(es) of any individual who instituted the lawsuit or charge or made the complaint, grievance, or other allegation;

(b)   a full description of the allegations of sexual harassment by Scott Dunlap;

(c)   Scott Dunlap's job title at the time that the lawsuit or charge was instituted or the complaint, grievance, or other allegation was made;

(d)   a full description of any statements or information provided by Scott Dunlap;

(e)   the date that the lawsuit or charge was instituted or the complaint, grievance, or other allegation was made;

(f)   the full name, last known residence address, last known telephone number(s), and last known email address(es) of any person(s) believed to possess

relevant knowledge concerning the allegations, a statement whether Defendant has conducted an interview of such person(s), and a full narrative description of any statements or information provided by the person(s);

(g)    the full names, last known residence addresses, last known telephone numbers, and last known email address(es) of all Defendant personnel who conducted or participated in the investigation of such lawsuit, charge, complaint, grievance, or other allegation; and

(h)    all actions taken by Defendant in response to the allegations, including but not limited to a description of any investigation or corrective actions.

37.    Defendant shall append to such reports all documents received from the person making the allegations, all documents related to any witness interviews (e.g., affidavits, interview notes, memoranda, etc.), any other material compiled for purposes of investigating the allegations, and all investigative reports or memoranda. Defendant may refrain from appending to such reports any documents generated by or at the direction of counsel for the purposes of defense of pending or anticipated litigation.

38.    The first report set forth in Paragraph 36, above, shall be due six (6) months from the Effective Date, with subsequent reports due every six (6) months thereafter, with the final reports due one (1) month prior to the expiration of this Decree.

39.     Defendant represents and warrants that its policies, practices, and procedures in effect in the Region on the Effective Date prohibit mandatory EAP referral of employees, i.e., Defendant prohibits requiring that employees participate in the EAP as a condition of those employees' continuing employment or as a condition of any aspect of such employment. In the event that, at any time during the duration of this Decree, Defendant modifies its policies, practices, and procedures in effect in the Region to permit mandatory EAP referral of employees, Defendant shall provide the following to the Commission within thirty (30) days of its implementation of such modification:

(a)     written notice to the Commission that Defendant has modified its policies, practices, and procedures in effect in the Region to permit mandatory EAP referral of employees;

(b)     the date when Defendant modified its policies, practices, and procedures in effect in the Region to permit mandatory EAP referral of employees; and

(c)     a copy of Defendant's modified policies, practices, and procedures in effect in the Region permitting mandatory EAP referral of employees.

## RECORD RETENTION

40.     For the duration of this Decree, Defendant shall retain all documents related to (a) the EAP Policies set forth in Paragraph 24, above, including any changes to the EAP Policies or their implementation; (b) the training materials,

attendance logs, and acknowledgments set forth in Paragraphs 30, 32, and 33, above; (c) any complaints of sexual harassment, sex-based harassment, sex-based discrimination, and/or retaliation that Defendant receives from its employees in the Region; and (d) any investigations and corrective action that Defendant undertakes in response to such complaints. Such documents shall include, but are not limited to, any and all written correspondence, notes, emails, photographs, video recordings, text messages, policies, PowerPoint presentations, training materials, memoranda, written statements, charges of discrimination, internal complaint documents, lawsuits, witness statements, internal reports, investigation findings, and disciplinary actions.

41.     Defendant's obligation to maintain records, as set forth in this section, is not intended to nor does it limit or replace Defendant's obligation to retain records as set forth in federal law or Commission regulations, such as 29 C.F.R. § 1602.14. Defendant shall comply with 29 C.F.R. § 1602.14.

42.     Defendant shall make all documents that are the subject of this Decree available for inspection and copying within fourteen (14) days of receiving a written request from the Commission for such documents.

## POSTING OF TITLE VII AND ADA NOTICE

43.     Within five (5) days of the Effective Date, Defendant shall conspicuously post a physical copy of the notice attached hereto as Exhibit B (the "Notice") on the bulletin board(s) ordinarily used by it for communicating with all employees

at Store 35 and Store 176. The Notice shall remain posted for three (3) years from the Effective Date. Defendant shall take all reasonable steps to ensure that the Notice is not altered, defaced, or covered by any other material. Defendant shall permit a representative of the Commission to enter Store 35 and Store 176 for purposes of verifying compliance with this Paragraph at any time during normal business hours without prior notice.

44.    Within fourteen (14) days of the Effective Date, Defendant shall certify, in writing, to the Commission that it has complied with the requirements of Paragraph 43, above.

## DISPUTE RESOLUTION AND COMPLIANCE REVIEW

45.    Upon motion of the Commission, the Court may schedule a hearing for the purpose of reviewing compliance with this Decree. Prior to such motion, the Commission shall notify Defendant, in writing, of the alleged noncompliance. Upon receipt of written notice, Defendant shall have fourteen (14) days either to correct the alleged noncompliance and so inform the Commission, or deny the alleged noncompliance, in writing. If the Parties cannot in good faith resolve their dispute, the Commission may file with the Court a motion to correct and remedy the breach. Each Party shall bear its own costs, expenses, and attorney's fees incurred in connection with such motion.

46.    In the event that a dispute under Paragraph 45, above, remains unresolved after the three-year (3-year) period set forth in Paragraph 11, above, the Commission may file a motion to correct or remedy the alleged breach within fourteen (14) days of its receipt of Defendant's notice of its correction or denial of noncompliance. If the Commission does not file such a motion within the aforementioned fourteen-day (14-day) period, the Decree shall no longer automatically extend pursuant to Paragraph 11, above, and shall instead expire.

47.    Jurisdiction to resolve any dispute arising under this Decree resides in the United States District Court for the Middle District of Pennsylvania.

48.    For the duration of the Decree, following thirty (30) days' written notice to Defendant, the Commission shall have the legal authority to require appearance and testimony of Defendant's personnel, at reasonable times and locations, at interviews and the production of documents to ensure compliance with any of the terms of this Decree. Neither the Commission's authority under this Paragraph nor any other provisions of this Decree shall be construed to limit or impair in any manner any other Commission authority to conduct investigations of Defendant that is provided by law, including but not limited to investigating charges of discrimination filed under Title VII of the Civil Rights Act of 1964, as amended; the Equal Pay Act of 1963 ("EPA"), as amended; the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended; Titles I or V of the ADA, as amended; the Genetic

Information Nondiscrimination Act of 2008; the Pregnant Workers Fairness Act; and any statute over which the Commission is given jurisdiction in the future, and conducting directed investigations authorized under the EPA, the ADEA, and any future statute which authorizes directed investigations.

<u>THE COMMISSION'S REPORTING REQUIREMENTS UNDER<br>IRC SECTIONS 162(f) AND 6050X</u>

49.     Defendant acknowledges and agrees to the following:

(a)     The Commission may be required to report the fact of this settlement to the IRS under Sections 162(f) and 6050X of the Internal Revenue Code, which allow for certain payments by employers to be deducted from the employer's taxes. If the Commission is required by law to do so, Defendant will be provided with a copy of the Form 1098-F provided to the Internal Revenue Service ("IRS"). Defendant's EIN is: EIN-24-0755415. The individual to whom the Commission should mail a copy of the Form 1098-F, if the Commission is required to issue one is: Autumn Wolfe, 1000 S. 2nd St., Sunbury, PA 17801;

(b)     The Commission has not made any representations regarding whether the amount paid pursuant to this Decree qualifies for the deduction under the Internal Revenue Code;

(c)     The Commission's provision to Defendant of Form 1098-F does not mean that the requirements to claim a deduction under the Internal Revenue Code have been met;

(d)     Any decision about a deduction pursuant to the Internal Revenue Code will be made solely by the IRS with no input from the Commission; and

(e)     Defendant is not acting in reliance on any representations made by the Commission regarding whether the amount paid pursuant to this Decree qualify for a deduction under the Internal Revenue Code.

## MISCELLANEOUS PROVISIONS

50.     Each Party shall bear its own costs, expenses, and attorney's fees in this action, including the costs of compliance and monitoring.

51.     This Decree constitutes the entire agreement and commitments of the Parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either Party or an agent of any Party not contained in this Decree shall be enforceable.

52.     The terms of this Decree shall be binding upon Defendant and all its present and future owners, directors, officers, managers, agents, representatives, successors, and assigns.

53.     If any provision of this Decree is found to be unlawful, only the specific provision in question shall be affected and all other provisions of this Decree shall remain in full force and effect.

54.     When this Decree requires a report or certification by Defendant of any fact(s), such report or certification shall be made under oath or penalty of perjury.

55.    When this Decree requires Defendant to submit reports, notices, or other materials to the Commission, Defendant shall deliver them by electronic means or hard copy to:

Gregory A. Murray
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Email: gregory.murray@eeoc.gov

56.    In the event that the Parties propose to make any modification to this Decree by their mutual consent, they shall submit such proposed modification to the Court by joint motion, and such modification shall not be effective unless approved by order of the Court. No waiver, modification, or amendment of any provision of this Decree shall be effective unless in writing, signed by the Parties to this Decree, and approved by the Court.

57.    This Decree may be executed in counterparts.

[The remainder of this page was intentionally left blank.]

**AGREED BY:**

**For Plaintiff U.S. Equal**
**Employment Opportunity**
**Commission:**

KARLA GILBRIDE
GENERAL COUNSEL

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL

*Debra M. Lawrence*
by RLP per authorization

DEBRA M. LAWRENCE
REGIONAL ATTORNEY

Dated: 06/03/2024

RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY

Dated: 06/03/2024

GREGORY A. MURRAY
SENIOR TRIAL ATTORNEY
Pa. I.D. No. 316144
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: 412-588-6907
Fax: 412-395-5749
Email: gregory.murray@eeoc.gov

Dated: 6/3/24

**For Defendant Weis Markets, Inc.:**

ANDREW F. MAUNZ
OF COUNSEL
Pa. I.D. No. 329674
Jackson Lewis P.C.
Liberty Center
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Phone: 412-232-0404
Fax: 412-232-3441
Email: andrew.maunz@jacksonlewis.com

*Counsel for Defendant Weis Markets, Inc.*

Dated: May 29, 2024

James E. Marcil
Senior Vice President of Human Resources

*Authorized Representative of Weis Markets, Inc.*

Dated: May 22, 2024

32

**IT IS SO ORDERED:**

_____
DATE

                    _____
                              HONORABLE YVETTE KANE
                              United States District Judge

## Exhibit A: Locations and Operations

| Str # | Address | Town/City | St. | ZIP-CODE |
|---|---|---|---|---|
| 74 | 2525 Memorial Highway | Dallas | PA | 18612 |
| 75 | 2859 SR 309 Suite 75 | Dallas | PA | 18612 |
| 91 | 237 S. Mountain Blvd. | Mountain Top | PA | 18707 |
| 116 | 401 North Main St | Elmira | NY | 14901 |
| 152 | 1 Weis Plaza (Walnut & Lower Brdwy) | Nanticoke | PA | 18634 |
| 154 | 600 Hunter Highway Suite #11 | Tunkhan-nock | PA | 18657 |
| 198 | 11798 Route 6 | Wellsboro | PA | 16901 |
| 214 | 1290 Front Street | Bing-hamton | NY | 13901 |
| 215 | 412 Day Hollow Road | Endicott | NY | 13760 |
| 217 | 800 Hooper Road | Endwell | NY | 13760 |
| 218 | 925 Main Street | Vestal | NY | 13850 |
| 219 | 160 Robinson Street | Bing-hamton | NY | 13904 |
| 220 | 50 Pennsylvania Avenue | Bing-hamton | NY | 13903 |
| 222 | 100 Rano Boulevard | Vestal | NY | 13850 |
| 106 | 589 Hamlin Highway | Hamlin | PA | 18427 |
| 126 | 146 Center Grove Road | Randolph | NJ | 07869 |
| 135 | 112 Atlantic Avenue | Dingman's Ferry | PA | 18328 |
| 136 | 146 Center Grove Road | Randolph | NJ | 07869 |
| 143 | 121 Water St | Newton | NJ | 07860 |
| 145 | 2045 Mansfield Vilg. Sq., State Rte 57 | Hacketts-town | NJ | 07840 |
| 147 | 140 State Route 23 | Franklin | NJ | 07416 |
| 151 | 924 Weir Lake Road | Brodheads-ville | PA | 18322 |
| 155 | 3236 ROUTE 940 STE 116 | Mt. Pocono | PA | 18344 |
| 156 | 70 Phoenix Street | Duryea | PA | 18642 |
| 157 | 123 Villiage Center Road | Hawley | PA | 18428 |

| 158 | 695 N. Courtland St | E. Strouds-burg | PA | 18301 |
|---|---|---|---|---|
| 159 | 1070 N. 9th Street | Strouds-burg | PA | 18360 |
| 161 | 5 N. River Street | Plains | PA | 18705 |
| 165 | 578 Carbondale Road | Scott Township | PA | 18447 |
| 166 | 2836 Route 611, Suite 100 | Tanners-ville | PA | 18372 |
| 170 | 1199 Texas Palmyra Hwy.-Suite N | Honesdale | PA | 18431 |
| 171 | Carbondale Plaza, 97 Brooklyn St. | Carbondale | PA | 18407 |
| 190 | 1020 Northern Boulevard | Clarks Summit | PA | 18411 |
| 201 | 933 NORTH NINTH STREET | STROUDS-BURG | PA | 18360 |
| 230 | 315 Route 206 | Hills-borough | NJ | 08844 |
| 234 | 293 U.S. Highway 206 | Flanders | NJ | 07836 |
| 4 | 339 W. Walnut St. | Shamokin | PA | 17872 |
| 7 | 555 Mahoning St | Milton | PA | 17847 |
| 9 | 305 River Ave | Wil-liamsport | PA | 17701 |
| 10 | 140 Continental Boulevard | Danville | PA | 17821 |
| 19 | 1571 Rt 209 | Mil-lersburg | PA | 17061 |
| 20 | 316 Walnut St | Newport | PA | 17074 |
| 21 | 135 -147 Market St | Sunbury | PA | 17801 |
| 24 | 2186 State Route 54 | Montgom-ery | PA | 17752 |
| 28 | 235 Main St | Catawissa | PA | 17820 |
| 31 | 6901 Westbranch Highway | Lewisburg | PA | 17837 |
| 36 | 1100 North Fourth St | Sunbury | PA | 17801 |
| 37 | 801 Loyalsock Avenue | Mon-toursville | PA | 17754 |
| 52 | 1916 Lycoming Creek Road | Wil-liamsport | PA | 17701 |
| 177 | 1272 East Penn Street | Muncy | PA | 17756 |

| | | | | |
|---|---|---|---|---|
| 192 | 725 Columbia Blvd. | Blooms-burg | PA | 17815 |
| 197 | 65 Meadow Green Drive | Mifflinburg | PA | 17844 |
| 226 | 719 Route 522 | Selinsgrove | PA | 17870 |
| 14 | 1440 Allegheny St | Jersey Shore | PA | 17740 |
| 22 | 313-327 W Bald Eagle St | Lock Ha-ven | PA | 17745 |
| 30 | 611 Fifteenth St | Hunting-don | PA | 16652 |
| 33 | 560 Westerly Parkway | State Col-lege | PA | 16801 |
| 35 | 224 North Logan Boulevard | Burnham | PA | 17009 |
| 40 | 275 Park Hill Plaza | Altoona | PA | 16602 |
| 48 | 62 East Shirley St | Mount Un-ion | PA | 17066 |
| 51 | 1471 Martin St | State Col-lege | PA | 16803 |
| 64 | 601 Pleasant Valley Blvd | Altoona | PA | 16602 |
| 118 | 501 North Centre Street | Philipsburg | PA | 16866 |
| 137 | 110 Rolling Ridge Drive | State Col-lege | PA | 16801 |
| 140 | 16 Bedford Square | Everett | PA | 15537 |
| 176 | 4521 William Penn Highway | Mif-flintown | PA | 17059 |
| 187 | 170 Buckaroo Lane | Bellefonte | PA | 16823 |
| 203 | 6 Millbrook Plaza | Mill Hall | PA | 17751 |
| 291 | 15300 Mcmullen Hwy SW | Cumber-land | MD | 21502 |
| 293 | 17600 Old National Sq Pike | Frostburg | MD | 21532 |

**Exhibit B:**

**Notice**

## NOTICE TO EMPLOYEES OF WEIS MARKETS, INC.

This Notice is being posted pursuant to a federal-court order entered in *U.S. EEOC v. Weis Markets, Inc.*, Civil Action No. 1:23-cv-01767-YK (M.D. Pa.), resolving a lawsuit filed by the U.S. Equal Employment Opportunity Commission ("the EEOC"), an agency of the United States Government, against Weis Markets, Inc. ("Weis Markets").

In its lawsuit, the EEOC charged that Weis Markets discriminated against a female employee in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA") by subjecting her to sexual harassment, requiring her to undergo a medical examination and answer disability-related questions that were not job-related and consistent with business necessity, and discharging her because she refused to undergo the medical examination and answer the disability-related questions. Weis Markets denied liability.

To resolve the case, Weis Markets and the EEOC have entered into a Consent Decree which provides, among other things, that:

1) Weis Markets is prohibited by federal law from discriminating against employees because of sex, including but not limited to subjecting any employees to sexual harassment;

2) Weis Markets is prohibited by federal law from requiring employees to participate in any employee assistance program that would result in medical examinations or disability-related inquiries that are not job-related and consistent with business necessity; and

3) Weis Markets is enjoined from retaliating against any person because he, she, or they opposed any practice made unlawful by Title VII or the ADA, filed a Title VII or ADA charge of discrimination, or participated in any investigation or proceeding under Title VII or the ADA.

The EEOC enforces the federal laws against employment discrimination on the bases of disability, race, color, sex (including pregnancy and related conditions, sexual orientation, and gender identity), religion, national origin, age, or genetic identity. If you believe that you have been harassed or discriminated against, or retaliated against for opposing or reporting discrimination, you have a right under federal law to contact the EEOC and report that harassment, discrimination, or retaliation. EEOC can be reached at 800-669-4000, TTY for the hearing impaired at 800-669-6820, or via email at info@eeoc.gov. The EEOC is a federal law-enforcement agency and charges no fees to receive and investigate complaints.

**This OFFICIAL NOTICE must remain posted for three (3) years from the date below and must not be altered, defaced, or covered by any other material.**

_____          _____
Date                                                       Tessa Greggs, Director of Associate Relations